## MARTIN *vs.* MARTIN.

[BILL IN EQUITY FOR RESCISSION OF CONTRACT ON GROUND OF FRAUD.]

1. *Offer of restoration as affecting right of rescission.*—It is not necessary to the maintenance of a bill in equity for the rescission of a contract on the ground of fraud, that the party complaining should have first restored, or offered to restore, what he received under the contract.

2. *Dissent of widow from husband's will as affecting right of dower.*—Where no provision whatever is made for the wife by her husband's will, her dissent from the will is not necessary to entitle her to dower in his estate.

3. *Limitation of suit for dower.*—Section 1372 of the Code, prescribing three years as the limitation of " all suits or proceedings for dower," applies to causes of action subsisting when the Code went into effect, (January 17, 1853,) and bars them within three years from that time ; and the subsequent act of 1858, limiting said section to cases in which the lands out of which dower is claimed were aliened by the husband, cannot revive a cause of action which was already barred at the time of its passage.

4. *Waiver of right of rescission by laches and acquiescence.*—The lapse of three years from the making of a contract, in compromise of a pending suit, is not sufficient to bar equitable relief against it on the ground of fraud, when it is not shown that the complainant, with full knowledge of the fraud, elected to treat the contract as valid and subsisting.

5. *Averments of fraud and injury.*—In a bill seeking the rescission of a contract, by which the complainant released and relinquished her dower and distributive interest in the estate of her deceased husband, in consideration of a sum of money paid her by the person who was contesting her rights, the averments, that the complainant was destitute, without home or friends, incapable of reading or writing, and unfit, from age and weakness of mind and body, for the transaction of business ; that the defendant, knowing these facts, falsely represented to her that her· agent and attorneys would defraud her of her entire interest in the estate, misrepresented to her the value of the estate and her interest therein, and, without giving her an opportunity to consult her agent and attorneys, pressed her into the immediate execution of the contract, which was already prepared, and which she then supposed released only her dower, but which in fact released also her distributive interest in the estate, for a sum of money greatly inadequate to its value,—sufficiently show both fraud and injury.

6. *Averment of willingness to do equity.*—In a bill which seeks the rescission of a contract on the ground of fraud, an offer in the bill to credit the defendant, on settlement before the court of the matters embraced in the contract, with the amount received by the complainant under the contract, or " to perform and abide by the order of the court in the premises," is a sufficient offer to do equity.

APPEAL from the Chancery Court of Perry.

Heard before the Hon. JAMES B. CLARK.

THE bill in this case was filed on the 14th September, 1857, by Betsey Martin, against Mary Martin, both individually and as executrix of the last will and testament of Shadrach Martin, deceased, together with the several children and heirs-at-law of said Shadrach; and sought, 1st, the rescission of a contract, by which the complainant, in consideration of the sum of $3,500 paid her by said Mary Martin, released to the latter her right to dower and a distributive share in the estate of said Shadrach Martin; and, 2dly, an account of the assets of said estate, and the recovery of the dower and distributive interest to which the complainant claimed to be entitled as the widow of said Shadrach.

It appears from the allegations of the bill, that the complainant and said Shadrach Martin were married in 1825; that said Shadrach died in 1850, in said county of Perry, leaving the complainant his lawful widow, and his several children by her and a former wife his lawful heirs-at-law and distributees; that by the last will and testament of said Shadrach, which was executed in 1846, and duly admitted to probate soon after his death, no provision whatever was made for the complainant, but his entire estate, both real and personal, was bequeathed and devised to his several children and the said Mary Martin, and the latter was appointed executrix; that the testator had been living with the said Mary Martin as his wife for several years prior to the execution of his will, continued so to live with her up to the time of his death, and had two children by her; that the estate of the said Shadrach exceeded $100,000 in value; that the complainant was entitled to one-fifth part of the personal estate, besides her dower in the real estate, and, in the year 1851, commenced legal proceedings in the probate court of said county for the recovery of her dower; and that these proceedings were discontinued, in the year 1854, under the contract now sought to be rescinded, in reference to which the averments of the bill are as follows:

" Complainant further shows, that said Mary Martin, executrix as aforesaid, to induce complainant to discontinue said proceedings, agreed to pay, and did pay her

the sum of $3,500, which was greatly inadequate to the value of her interest in said estate; and complainant thereupon executed to said Mary, or to her and the legatees named in said will, or some of them, an instrument by which complainant released her interest in the estate of said Shadrach, as she has been informed; and she prays that said instrument may be produced by said Mary Martin, on the hearing of this cause, for the inspection of the court. Said instrument was executed by complainant under the following circumstances: Complainant had commenced the proceeding aforesaid by her agent, Levi Martin, one of the children of said Shadrach by a former wife, and had no other friend or adviser to rely on. She was poor and destitute, and, by the act of said testator discarding her for said Mary, had become homeless and friendless, and was reduced to beggary. She had no education, and could neither nor write; and, from age, and weakness of mind and body, was wholly incapable of transacting business. Of all these facts and circumstances said Mary Martin had notice, and was well advised. Under these circumstances, complainant was approached by the agents of said Mary and her children, and was falsely informed by them, that said Levi Martin, and the lawyers employed by him, would deceive her, by litigating her claim in the courts until she died, and would take it all, and she would never get the benefit of it; and importuned her to compromise her rights in said estate, by taking said sum of $3,500, which they represented to be the full value of her interest in said estate, and that she was only entitled to dower in the real estate; and said Mary made divers other false and fraudulent representations to complainant, in reference to said estate and its value, in order to induce her to execute said release; and when complainant asked for delay, until she could see her attorneys or said agent, in order to satisfy herself of the facts, said agents refused to allow her any time, and pressed her to take said sum of $3,500, and to sign said instrument, which was prepared for the occasion; and complainant did so, believing at the time that said instrument only released her right to dower in the real estate;

but which, as she has been informed, was so worded as to release also her distributive share of said estate. And complainant avers, that said instrument is null and void as to her; that she executed the same, relying on the good faith of said Mary and her agents, and because she was by them misled, deceived and defrauded in the premises. But complainant is still willing that said sum of $3,500 may be allowed as a credit on the value of her dower interest in said estate; and if her dower interest should not be of so great value, then she willing to allow the balance as a credit on her distributive share of the personal property of said estate."

The prayer of the bill was for a rescission and cancellation of the release, an account of the estate, a decree for the complainant's dower and distributive interest, contribution from the legatees, if necessary, and general relief.

An amended bill was afterwards filed, adding at the end of the section above quoted these words : " Or complainant is willing, and hereby offers, to credit said sum upon the amount due her from said executrix for her interest in the assets of said estate with which said executrix is chargeable, or to perform and abide by the decree of the court in the premises; and complainant further avers, that an offer by her to return said $3,500 to said Mary Martin, before the filing of this bill, was unnecessary, because she avers said Mary would have refused to accept the same."

The defendants filed answers, incorporating a demurrer to the bill for want of equity, and specifying as causes of demurrer the several objections here noticed in the briefs. The chancellor sustained the demurrer, and dismissed the bill, but without prejudice; and his decree is here assigned as error.

BYRD & MORGAN, for appellant.—1. The chancellor sustained the demurrer to the bill, on the single ground, that it was necessary for the complainant, before filing her bill, to have offered to rescind the contract, and to restore the money which she had received under it; or to have alleged in her bill some valid excuse for her failure

to do so. We insist, that where the rescission of a contract is sought on the ground of fraud, a previous offer to rescind is not necessary.—Garner, Neville & Co. v. Leverett, 32 Ala. 410; Bailey v. Jordan, 32 Ala. 50; Thompson v. Lee, 31 Ala. 292; 4 Dana, 319, 484; 5 Dana, 184. But, even if a previous offer to rescind is generally necessary, the fiduciary relation existing between these parties —one being a distributee, and the other executrix, devisee and legatee—exempts the case from the operation of that rule; especially, when coupled with the allegation of fraud, and the offer in the bill to account for what the complainant has received.—Johnson v. Johnson, 5 Ala. 90; Spence v. Whitaker, 3 Porter, 297; Kennedy v. Kennedy, 2 Ala. 572; Juzan v. Toulmin, 9 Ala. 684; 7 Hill, 260; 3 Dana, 18; 1 Story's Equity, §§ 321–22; 7 Johns. Ch. 174; 1 ib. 497, 620; 4 ib. 303. Moreover, the alleged destitute condition of the complainant, and the fact that the defendant has in her hands, of the money and property belonging to the complainant, more than the latter received under the contract, show a sufficient excuse for the failure to make an offer to rescind; and an additional excuse is shown by the averment of the amended bill, which is admitted by the demurrer, that an offer to rescind would not have been accepted by the defendant. Elliott v. Boaz, 9 Ala. 772; Michaud v. Girod, 4 Howard, 555.

2. Fraud being shown, the law presumes injury. Besides, the allegation of gross inadequacy of price is sufficient to show injury.—1 McCord's Ch. 389; 2 ib. 385; 5 Ala. 90; 12 Ala. 64.

3. As to the other questions raised by the demurrer, the appellants rely on the decree of the chancellor, and the authorities cited by him.

I. W. GARROTT, with WM. M. BROOKS, and J. R. JOHN, contra, made the following points: 1. An offer to rescind, accompanied with a tender of what the complainant has received under the contract, is a condition precedent to filing a bill for rescission; or the bill must show a legal excuse for the failure to make such offer and tender. The

bill in this case does not aver any previous offer to rescind, and the alleged excuse for the failure is wholly insufficient.

2. If the allegation of fraud is sufficient, the bill is defective in not showing consequent injury. The allegation of gross inadequacy, in the absence of facts on which it can operate, is the averment of a legal conclusion.

3. The complainant's laches and acquiescence amount to a ratification of the contract, and bar her claim to relief. She appears to have lived in the county in which her husband died, and in which his estate is situated; and must be presumed to have been acquainted with the value of the estate, and of her own interest in it. She acquiesces in the contract for more than three years, and does not complain until after she has spent all the money which she had received under it. No fiduciary relation existed between the parties, and it cannot be supposed that the complainant, in entering into the contract, relied on any of the defendant's representations.—Kern v. Burnham, 28 Ala. 428; Hall v. Thompson, 1 Sm. & Mar. 443.

4. The bill does not allege, that the complainant dissented from her husband's will within twelve months after its probate. This is imperatively demanded by the statute. Clay's Digest, 172, § 3. In Green v. Green, (7 Porter, 19,) it was held, that the dissent was sufficiently manifested by filing a petition for dower within the twelve months. In Martin v. Martin, (22 Ala. 86,) the petition was filed before the probate of the will. The case of Turner v. Cole, (24 Ala. 364,) is based on the former decisions, without argument or authority to sustain it. See, also, Hilliard v. Binford, 10 Ala. 977; and Craven v. Craven, 2 Dev. Eq. 338.

5. The claim for dower is barred by section 1372 of the Code, which, so far as it operates on this case, is not affected by either the act of 1854 or the act of 1858. The bill was filed more than three years after the Code went into effect, and the bar was complete before the act of 1858 was passed. That this section of the Code applies to causes of action existing when the Code went into

effect, (notwithstanding a *dictum* to the contrary in Ridg-way v. McAlpine, 31 Ala. 458,) see Central Bank v. Solomon, 20 Geo. 409; Stewart v. Sanford, 30 Miss. 49; State v. Swope, 7 Indiana, 91; 4 Hen. & M. 266; Rhinehart v. Schuyler, 2 Gilman, (Ill.) 473; Baldwin v. Cross, 5 Ark. 510; Beale v. Nason, 14 Maine, 344; Rawls v. Kennedy, 23 Ala. 240. That the act of 1858 cannot be made to retroact, so as to revive a cause of action already barred at the time of its passage, see Dash v. Van Kleeck, 7 Johns. Ch. 477; Jackson v. Sherwood, 3 Caines' R. 67; 6 Cranch, 135; 2 Gallison, 139; 3 Dallas, 386; 3 N. H. 378; 1 Hill, 333.

A. J. WALKER, C. J.—We have recently considered the question, whether it is indispensable to the maintenance of a bill for the rescission of a contract on the ground of fraud, that there should have been an antecedent restoration, or offer of restoration, of what the complainant had received under the contract; and we regard that question as settled in the negative.—Garner, Neville & Co. v. Leverett, 32 Ala. 410; Bailey v. Jordan, *ib.* 50. See, also, Abbott v. Allen, 2 Johns. Ch. R. 519; Parham v. Randolph, 4 Howard's (Miss,) R. 435; Edwards v. McLeay, Cooper's Ch. Cas. 308; S. C., 2 Swanst. 302.

[2.] It is a principle established by our decisions, that the widow's dissent from her husband's will is not necessary to entitle her to dower in her husband's estate, when no provision whatever is made for her in the will.—Green v. Green, 7 Porter, 19; Martin v. Martin, 22 Ala. 86; Turner v. Cole, 24 Ala. 364; Clay's Digest, 172, § 3; Code, § 1609.

[3.] The bill in this case was filed on the 14th September, 1851, and there was, therefore, a period of more than three years after the Code went into operation, before the suit was commenced. Section 1372 of the Code provides, that "all suits or proceedings for dower must be commenced within three years after the death of the husband, and not after." If this statute of limitations operates upon rights of dower existing at the time when it went into force, then the suit of the complainant as to

the claim of dower is barred.   In Ridgway v. McAlpine,
(31 Ala. 458,) the remark was made, that the statute
above quoted "applies only where the husband died *after
the Code went into effect;*" but, as that suit was commenced
in November, 1854, before the time prescribed in the
statute had elapsed after it became the law, the remark
was altogether unnecessary, and had reference to a point
which did not arise in the case; and we do not feel bound
to follow it as a precedent, if we deem it wrong upon
principle.   We are bound by the adjudications in this
State, and the weight of authority elsewhere, to recog-
nize the doctrine, that statutes of limitation, when they
allow a reasonable time for the commencement of suit,
operate upon causes of action subsisting at their adop-
tion, unless they contain some opposing provision.—
Rawls v. Kennedy, 23 Ala. 240; Harvey v. Thorpe,
14 Ala. 103; Cox v. Davis, 17 Ala. 714; Owen v. Slatter,
26 Ala. 547; Angell on Limitations, 22–23; Weber v.
Manning, 4 Missouri, 229; Rhinehart v. Schuyler, 2 Gilm.
(Ill.) 473; Bank of Ala. v. Dutton, 9 How. 522; Central
Bank v. Solomon, 20 Ga. 408; Pierce v. Toley, 5 Met.
168–171; Walker v. Bank of Miss., 2 Eng. 500; People
v. Supervisors, 10 Wend. 363; Sayre v. Wisner, 8 Wend.
661; Sleeth v. Murphy, 1 Morris, (Iowa,) 321.   If this
were not the doctrine of the law, there would be an ab-
surd discrimination in favor of the superior antiquity of
subsisting causes of action.

   The act approved February 15th, 1854, (Pamphlet
Acts, '53–54, page 71,) presents no obstacle to the opera-
tion of section 1372 of the Code upon causes of action
existing when the Code went into force.   That act restricts
the application of the provisions of chapter 21, title 1,
part 3d of the Code, to causes of action commencing on
or after the day when the Code went into operation.
But that restriction does not reach section 1372, which
is not found in the designated chapter.   The act of 1854
further provides, that causes of action accruing, and
possessions commencing, prior to the time when the Code
went into operation, shall be controlled by the pre-exist-
ing statutes of limitations, which were " re-enacted,

revived, and continued in full force, for that purpose only." This provision does not, in our judgment, exempt those causes of action which existed when the Code became the law, from the influence of the statute of limitations contained in the Code, outside of the chapter above specified. The effect of the provision is, to leave the pre-existing statutes of limitations, not embraced in the specified chapter, unrepealed by the Code, so far as they affect the causes of action which existed when the Code went into operation. The result is, that the subsisting causes of action fall within the principle settled in the case of Rawls v. Kennedy, *supra;* and therefore a cause of action not within the operation of the chapter of the Code above specified, if it existed when the Code went into force, would come within the purview of both the statute of limitations in the Code and the old law. Accordingly, we decided in Lewis v. Lindsay, (33 Ala. 304,) that an appeal from a decree of the probate court, rendered before the Code, was barred under the old law; and we decided in Banks v. McDougald, (29 Ala. 75,) that a similar decree of like date was barred by the Code.

We feel constrained to decide, in contravention of the remark made in Ridgway v. McAlpine, that the complainant's right of dower fell under the operation of the statute of limitations of three years, on the 17th January, 1853, when the Code became the law, and was barred in three years from that time. On the 8th February, 1858, an act was approved which amends section 1372 of the Code, so as to make it applicable only where the land out of which dower is claimed was aliened by the husband; but that act cannot affect the question here, for the bar against the complainant was complete before the adoption of the act; and it is an established principle, that the repeal of a statute of limitations does not impair a bar perfected before the repeal.—See the authorities collected in note 3, section 22, of Angell on Limitations; United States v. Burford, 3 Peters, 30.

[5.] The bill in this case does not show that the complainant, with a full knowledge of the fraud perpetrated upon her, elected "to treat the contract as a valid and

subsisting one;" and she is not precluded by acquiescence from the maintenance of her bill.—Kern v. Burnham, 28 Ala. 428.

[6.] The allegation of fraud in the bill is sufficient. The averment is, that the complainant was homeless, friendless and destitute; without education, incapable of reading or writing, and, from age and weakness of mind and body, unfit for the transaction of business, and the defendant was fully apprised of those facts ; that she was falsely told, that her agent and lawyers would deceive her, and would take to her exclusion her entire interest in the estate ; that she was importuned to make the contract; that $3,500 was represented as the full value of her interest in her husband's estate; that "divers other false and fraudulent representations," in reference to the estate and its value, were made, in order to induce her to make the contract ; that she was denied an opportunity which was asked to see her lawyers and agent, in order to satisfy herself as to the facts; that she was pressed into the immediate execution of a previously prepared contract ; that she believed at the time that it only released her dower, and that the sum paid to her was greatly inadequate to the value of her interests. These allegations are sufficient to show fraud; and with some hesitation we decide, that the allegation of great inadequacy is a sufficient averment of injury.

[7.] We understand the complainant's amended bill to offer to credit the defendant with the amount paid her, or "to perform and abide by the order of the court in the premises." We understand this to amount to an offer to perform such order as the court may make touching the restoration of the money received; and this is a satisfaction of the rule, which requires that the complainant should offer to do equity.—Miller v. Bates, at the present term ; Branch Bank v. Strother, 15 Ala. 57 ; Tucker v. Holly, 20 Ala. 426.

The chancellor erred in deciding against the equity of the bill, and his decree must be reversed, and the cause remanded.

STONE, J., not sitting.